**Darryl E. SMITH, Petitioner–Appellant,**

v.

**Robert FARLEY and Indiana Attorney General, Respondents–Appellees.**

No. 92–1299.

United States Court of Appeals, Seventh Circuit.

Argued March 1, 1994.

Decided May 13, 1994.

---

Robert J. Palmer, May, Oberfell & Lorber, South Bend, IN, for petitioner-appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley (argued), Office of the Atty. Gen.,

Federal Litigation, Indianapolis, IN, for re-spondents-appellees.

Before BAUER, FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

This is an appeal from the denial of a petition for a writ of *habeas corpus*. Petitioner had requested *habeas* relief from his recent state sentence that had been enhanced based on an allegedly invalid prior state conviction. We affirm and hold that a federal court should not entertain a state prisoner's challenge to the constitutionality of a past conviction used to enhance a new sentence unless that prisoner has not been afforded by the state a full and fair opportunity to collaterally challenge that past conviction.

### I. Background

In 1988, Darryl Smith was found guilty of robbery in an Indiana state court. In sentencing Smith, the Indiana court enhanced his ten-year prison term by thirty years under the state's recidivist offender statute. *See* Ind.Code § 35–50–2–8.

■ Pursuant to Indiana law, Smith filed a petition for post-conviction relief[1] in state court challenging the constitutionality of a 1974 burglary conviction—the conviction upon which his recidivist status was premised in part. In his petition Smith argued that his 1974 conviction for burglary was constitutionally invalid because it was based upon a guilty plea which Smith asserted was not knowingly, intelligently, and voluntarily made. *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Smith also claimed that the lawyer who represented him at this plea hearing rendered constitutionally inadequate assistance. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[2]

In response to Smith's petition, an Indiana trial court considered the merits of his constitutional claims regarding his '74 conviction, determined that no error had been made in 1974, and denied post-conviction relief. The Indiana Court of Appeals and the Supreme Court of Indiana reviewed the trial court's judgment, and both affirmed the denial of Smith's petition. Subsequently, pursuant to 28 U.S.C. § 2254, Smith filed a *habeas* petition in the United States District Court for the Northern District of Indiana presenting exactly the same challenges to his '74 plea that he already had argued before the Indiana courts. The district court denied Smith's *habeas* petition on the merits.

### II. Analysis

■ As a threshold matter, the State of Indiana argues that the federal courts lack subject matter jurisdiction to hear a *habeas corpus* petition such as Smith's. We disagree. The *habeas* statute grants federal courts jurisdiction to entertain a petition for relief from a person who, at the time the petition is filed, is "in custody" for the conviction under attack. 28 U.S.C. § 2254(a); *see also Maleng v. Cook*, 490 U.S. 488, 490–91, 109 S.Ct. 1923, 1924–25, 104 L.Ed.2d 540 (1989). Because a person currently serving a

---

1. Indiana has codified the common law writ of error *coram nobis* which is essentially equivalent to a *habeas* petition except there is no custody requirement. Ind.Code § 35 app. P.C.R. 1 (1980). In Indiana "[a]ny person who has been convicted of, or sentenced for, a crime by a court of this state, and who claims: ... that the conviction or the sentence was in violation of the Constitution of the United States or the constitution or laws of this state; ... may institute at any time a proceeding under this Rule to secure relief." *Id.* This post-conviction relief provides a hearing on the merits. *Id.* In this hearing "[t]he court may receive affidavits, depositions, oral testimony, or other evidence and may at its discretion order the applicant be brought before it for a hearing. The petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence." *Id.* During the post-conviction hearing the court must make "specific findings of fact and conclusions of law on all issues presented, whether or not a hearing is held." *Id.* A petitioner is entitled to appeal from any adverse judgment of the post-conviction trial court. *Id.*

2. Although Smith raised this claim in the post-conviction petition that he filed in state court, he waived it for purposes of this appeal because he did not raise it in the district court. *Erff v. Mark–Hon Indus.*, 781 F.2d 613, 618 (7th Cir. 1986).

sentence that was enhanced on the basis of a prior conviction is still in custody, he may challenge the enhancing conviction as constitutionally invalid even though that prior conviction's original custodial term has expired. *Crank v. Duckworth*, 905 F.2d 1090, 1091 (7th Cir.1990), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). Thus, since Smith is again in custody, at least in part because of his '74 burglary, a federal court has jurisdiction over a petition challenging the constitutionality of that '74 conviction.

During oral argument inquiry was made whether this court's recent decision in *United States v. Mitchell*, 18 F.3d 1355 (7th Cir. 1993) had implicitly endorsed an approach suggested by Judge Easterbrook that would prohibit, as a prudential matter, a defendant from challenging the merits of a prior conviction once his original sentence had been served. *Cuppett v. Duckworth*, 8 F.3d 1132 (7th Cir.1993) (*en banc*) (Easterbrook, J., concurring), *pet'n for cert. filed*, Jan. 6, 1994. In *Cuppett*, Judge Easterbrook criticized the practice of allowing *habeas* petitioners to wage derivative collateral attacks [3] against state convictions that have been used to enhance their current sentences. *See Cuppett*, 8 F.3d at 1144 (Easterbrook, J., concurring). He concluded that a derivative collateral challenge to a prior state conviction is an instance in which a federal court should not exercise the full measure of its jurisdictional power to review the constitutionality of state convictions, at least where the petitioner had both the incentive and the opportunity to challenge the conviction while in custody for that conviction. *Cuppett*, 8 F.3d at 1145–48 (Easterbrook, J., concurring). He constructively argued that a better approach would be to limit *habeas* review to those cases in which the petitioner is claiming that a conviction which has already been ruled invalid on direct appeal or on direct collateral review has been used to enhance his sentence. *Id.* at 1146 (Easterbrook, J., concurring). Prior to *Mitchell* this circuit, however, had not adopted such an approach. *See Cuppett*, 8 F.3d at 1136, n. 1 (majority opinion); *id.* at 1149 (dissenting opinion).[4] Though informed by Judge Easterbrook's teachings, *Mitchell* did not implicitly change this position.

*Mitchell* held that a federal defendant cannot attack a prior state conviction at a federal sentencing hearing unless he can demonstrate that the prior conviction is presumptively void. 18 F.3d at 1360–61. The *Mitchell* court noted that the principal basis for its decision was that a federal sentencing hearing is an inappropriate forum for a fact-intensive inquiry into the validity of a prior state conviction.[5] *Mitchell* did suggest fora for challenging a prior state conviction—a direct appeal from the conviction itself or a collateral proceeding in state or federal court while serving the sentence for the conviction; however, *Mitchell* presents an admonition, not a requirement, as it never concluded that this list is exclusive.[6] The only forum that

---

**3.** By derivative collateral attacks we mean those challenges to prior convictions whose original terms of custody have expired.

**4.** In *Cuppett*, both the majority and the dissenting opinions addressed the merits of Cuppett's claim. 8 F.3d at 1136–41. Nevertheless, the *Cuppett* majority expressly reserved ruling on the approach suggested in Judge Easterbrook's concurrence. *Id.* at 1136 n. 1. The majority reached the merits of the petitioner's attack because they were "fully briefed and argued by the parties and thoroughly addressed by the Indiana courts." *Id.*

**5.** *Mitchell*, 18 F.3d at 1360–61. "At sentencing a federal court is not being asked to approve, enforce, or vacate the prior conviction, but merely *to determine a proper federal sentence* for a federal crime. Thus, a federal sentencing hearing [is] not 'the proper forum for the wholesale vindication of constitutional rights infringed in an earlier criminal proceeding.'" *Id.* at 1361 (quoting *United States v. Roman*, 989 F.2d 1117, 1128–29 (11th Cir.1993 (*en banc*) (Tjoflat, C.J., concurring)). As *Mitchell* recognized, state or federal collateral proceedings are available to convicted persons for all such challenges. *Id.* at 1361–62.

**6.** In *Mitchell* the court encouraged prisoners to challenge convictions directly "'rather than tarry and then launch indirect collateral attacks during sentencing for some other offense.'" *Id.* at 1361 n. 9 (quoting *Cuppett*, 8 F.3d at 1146–47 (Easterbrook, J., concurring)). While *Mitchell* thus recognized that a prisoner can best avoid the possibility of an invalid prior conviction augmenting his present sentence if he challenges early and directly all constitutional errors, *Mitchell* did not purport to require a prisoner to avail himself of those opportunities or forever lose them.

*Mitchell* found improper for challenging a prior state conviction was a federal sentencing hearing.[7] The issue principally addressed by *Mitchell* was not where a prisoner can obtain meaningful federal review of the validity of a prior state conviction, but rather where he cannot—in a federal sentencing hearing.

The fact that a forum, other than a sentencing hearing, existed for the defendant in *Mitchell* to raise his fact-intensive challenge to the validity of a prior state conviction is fundamental to our decision. According to *Mitchell*, the function of a federal sentencing court is to determine a proper federal sentence for a federal crime, not to approve, enforce, or vacate a prior state conviction. *See* 18 F.3d at 1361. Limiting the review of prior convictions at a federal sentencing hearing to those which are presumptively void ensures that the hearing will not be transformed into a mini-trial concerning the validity of prior convictions *when alternative fora* (a state collateral proceeding or an indirect collateral attack to the enhanced sentence in a § 2255 motion) exist in which a defendant can challenge the constitutionality of prior state convictions whose effects are still felt. *Id.* at 1361–62. Although *Mitchell* limited the scope of review of a prior state conviction in one forum—a federal sentenc-

ing hearing—it carefully preserved the ability to obtain fact-intensive review of the conviction in an alternative forum—a state or federal collateral proceeding. Thus, *Mitchell* acknowledges that the scope of federal review of an enhancing state conviction may be restricted, but only so long as a fact-intensive review of the validity of the conviction is available, until used, in at least one forum.

 We believe that such review should generally be available unless, a defendant has already *exercised* any earlier opportunity for a full and fair state collateral review, or review would be inconsistent with existing doctrines determining the circumstances under which such collateral review is available.[8] Because such a challenge is against the new use of a prior conviction—i.e. a challenge to the state's enhancement procedures—a defendant's failure to use an initial opportunity to obtain review of a state conviction—in a direct appeal or collaterally, while still serving the sentence—should not bar him from obtaining later indirect review of the conviction now being used in a wholly new manner. In *Parke v. Raley*, —— U.S. ——, ———— ————, 113 S.Ct. 517, 522–23, 121 L.Ed.2d 391 (1992), the Supreme Court explicitly left open whether the Due Process Clause requires state courts to re-review guilty pleas which were later used for enhancement purposes.[9]

7. Had *Mitchell* found a collateral proceeding to be an improper forum for indirectly challenging the validity of a long ago served, prior state conviction, it would have foreclosed the possibility of a federal prisoner attacking the conviction in a § 2255 motion after his sentencing for a later offense. Yet *Mitchell* expressly recognized the ability of a federal prisoner to wage a post-sentencing attack via a § 2255 motion on an enhancement predicated on an old state conviction. *See* 18 F.3d at 1361–62. *Mitchell*'s restriction on the scope of federal review of state convictions extends no further than to federal sentencing hearings.

8. Certain defendants may forfeit their *habeas* review under circumstances not at issue in this case. For example, a defendant who has already obtained a state post-conviction review, even if before his later crime—having already exercised his opportunity and lost (as long as the state provided a full and fair review)—does not need another review on the merits. Any further federal *habeas* review would necessarily be limited to the adequacy of that post conviction procedure. *See infra* discussion pp. 1370–71. Furthermore, a defendant may still lose his opportunity

through any of the existing grounds for denying *habeas* relief, including but not limited to the following: a defendant who neglected to make his objections and arguments at trial, or on appeal in a way required by state law, may not obtain collateral review unless he can show cause and prejudice, *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); a defendant who has already sought *habeas* review and lost usually cannot have a second try because it would be an abuse of the writ, *see* Rule 9(b) of the Rules Governing Section 2254 Cases, *see also McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Furthermore, Rule 9(a) of the Rules Governing Section 2254 Cases may necessarily have some impact when delay is an issue. *See infra* note 11, and accompanying text.

9. The Ninth Circuit has held that a federal statute, barring a defendant convicted of a drug offense from challenging the validity of his prior conviction now used to enhance his present sentence, violated due process. *See United States v. Davis*, 15 F.3d 902, 914–16 (9th Cir.1994). Contra *United States v. Williams*, 954 F.2d 668, 673 (11th Cir.1992).

Unless a defendant has already used his initial collateral review for his prior conviction, we believe that he ought to have a later opportunity to obtain such a review, in at least some forum, of the state court's use of the prior conviction to enhance a sentence for a new crime. Of course federal courts should only grant *habeas* review if that review is consistent with otherwise applicable doctrines determining the circumstances under which collateral review is available. We cannot insist that states disregard rules of finality and threaten that, if they adhere to the rules, we will not. We only say that if a defendant does not have access to a fair procedure in a state court affording him a review, on the merits, of the constitutionality of a prior conviction after it has been incorporated into a new, enhanced sentence, a federal court may properly grant him such review.[10]

Generally, when a defendant, while in custody following an initial conviction, decides whether to collaterally challenge the constitutionality of the conviction, he likely weighs its known consequences against the likelihood of re-prosecution for the same or greater crime (coupled with the remote possibility of acquittal), along with the cost and effort of mounting that challenge. One can easily envision a defendant being able to entertain the immediate consequences of such a choice, and thus, at least with respect to them, make a rational determination whether to challenge his conviction. One must also acknowledge, however, that a convicted person, who lacks relevant insight into the long-term repercussions of his choice, may not have the informed incentive to make the most efficient, and therefore personally appropriate decision.

While trying to factor into his calculation information as to how (and by how much) his present plea may be used in the future to enhance a later conviction, a defendant (especially a first-time offender sentenced to short, or no prison time) may have some difficulty getting his arms around the problem. Even a sophisticated defendant, who discounts to a present value all the probable contingencies of future uses of his attending plea, can be frustrated by a change in the sentencing enhancement statutes in any of the relevant jurisdictions. In light of the foregoing informational variables, the assumption that a defendant has sufficient incentive to challenge his prior conviction, beyond that inspired by its immediate consequence, seems unwarranted. As a policy matter, we may even question whether we would want every defendant, without the necessary information, to make such an unenlightened decision. Because frequent plea acceptance has grown necessary to the smooth functioning of the modern criminal judicial system, we must be careful to avoid a rule that unduly discourages the practice. *Corbitt v. New Jersey,* 439 U.S. 212, 219–20, 99 S.Ct. 492, 497–98, 58 L.Ed.2d 466 (1978). Forcing all defendants, many of whom will never have another conviction, to consider unquantifiable risks when making their pleas decision will cause those who are risk-averse to accept pleas less often than they would otherwise. Reducing the motivation to plea, below what which would otherwise be an efficient level is contrary to sound policy. *Id.* Thus, for the systemic concerns of both fairness and efficiency, we believe that Smith should be allowed to raise his arguments concerning his prior conviction at some point

---

**10.** In our view this does not run afoul of the Constitution's full faith and credit requirement. *See* U.S. Const. Art. IV. We distinguish between a state's decision merely to *use* an already-served, prior conviction of a different state as evidence in its own recidivist-enhancement scheme from a state's constitutional obligation to *enforce* a judgment of sister state. *See e.g., Mitchell,* 18 F.3d at 1361 ("At sentencing a federal court is not being asked to approve, enforce, or vacate the prior conviction, but merely to determine a proper federal sentence for a federal

crime."). The argument may be similarly applied to states. Suppose state A imposes the first conviction and State B the second. State B may offer the defendant review of his earlier State A conviction only as far as its new use in State B. Since such a defendant would not be seeking to set aside his State A conviction as constitutionally invalid, but merely to challenge the constitutionality of his conviction as used to enhance his present sentence in State B, principles of federalism, comity, and full faith and credit are not as directly implicated. *Cf. id.*

*after* it has been used to enhance his new sentence.[11]

■ Although we believe that one should generally have the opportunity to receive such post-enhancement review,[12] we do not believe that the review must take place in a federal court. State courts are as competent as federal courts to hear such a collateral claim. *Stone v. Powell,* 428 U.S. 465, 493 n. 35, 96 S.Ct. 3037, 3052 n. 35, 49 L.Ed.2d 1067 (1976); *Frances J. v. Wright,* 19 F.3d 337, 341 (7th Cir.1994). In *Stone* the Court wrote that "[d]espite differences in institutional environment and the unsympathetic attitude to federal constitutional claims of some state judges in years past, we are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States." 428 U.S. at 493 n. 35, 96 S.Ct. at 3032 n. 35. As a general matter, state and federal courts are wholly coequal in their recognized ability and responsibility in protecting a citizen's constitutional rights. *Id.* Especially in matters such as reviewing the constitutionality of a guilty plea, the argument that federal courts are somehow more expert in applying the law rings hollow when one considers the volume of such pleas that are dealt with on a daily basis by state trial judges. *See id.* The mere fact that a person happens to be a federal judge does not necessarily make that person more competent, or conscientious, or learned with respect to common constitutional issues than a state court judge. *Id.; see Withrow v. Williams,* —— U.S. ——, ——, 113 S.Ct. 1745, 1770, 123 L.Ed.2d 407 (1993) (Scalia, J., concurring in part and dissenting in part) ("It would be a strange constitution that regards state courts as second-rate instruments for the vindication of federal rights and yet makes no mandatory provision for lower courts (as our Constitution does not)."); *see also Herrera v. Collins,* —— U.S. ——, ——, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993) ("Federal courts are not forums in which to re-litigate state trials."). Since the very existence of lower federal courts is a matter of congressional discretion, *see* U.S. Const. Art. III; *Frances J.,* 19 F.3d at 341–42, the Constitution does not grant an entitlement to have the merits of a federal claim determined by a federal court. *See Stone,* 428 U.S. at 493 n. 35, 96 S.Ct. at 3052 n. 35.

■ Notwithstanding the Supreme Court's recent retrenchment of the availability of *habeas* relief, *see Cuppett,* 8 F.3d at 1145 (Easterbrook, J., concurring) (discussing modern *habeas* jurisprudence), one may mount a *habeas* challenge to his conviction, on constitutional grounds, insofar as he alleges that his conviction is "fundamentally unfair and unreliable." *See e.g., Mitchell,* 18 F.3d at 1360–61 (citing *United States v. Timmreck,* 441 U.S. 780, 783, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979)). In this vein the Supreme Court has declined to apply *Stone v. Powell* when a petitioner has alleged a violation of fair procedures that would make his conviction unreliable, and he was not afforded a full and fair, state, post-conviction, collateral review of his claim. *See e.g., Withrow,* —— U.S. at ——, 113 S.Ct. at 1753 (concluding that *Stone v. Powell* did not apply when police officers failed to give defendant his *Miranda* warning before conducting custodial interrogation); *Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986) (declining to apply rule of *Stone* to claim of ineffective assistance of counsel because "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defence and prosecution that the trial was rendered unfair and the verdict rendered suspect."); *Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979) (holding that the rule of *Stone* does not apply to trial court's violation of Fourteenth Amendment in selecting of grand jury); *see also Cuppett,* 8 F.3d at 1144

---

11. A court may need to weigh a defendant's incentive to challenge his prior conviction against any prejudice suffered by the state due to the delay. *See* Rule 9(a) of the Rules Governing Section 2254 Cases. As a defendant facing a recidivist statute, the petitioner may be able to show that his petition is based on a ground, the new use of his prior conviction, of which he could not have had knowledge through the exercise of reasonable diligence—before the occurrence of whatever circumstances that resulted in prejudice to the state. *See id.; see also supra* note 8, and accompanying text.

12. *See supra* note 8 and accompanying text.

(Easterbrook, J., concurring) (arguing that, on *habeas*, an analysis on outcome determination, without attention to whether the proceeding was fundamentally unfair or unreliable, is defective). Smith's case is neither substantively nor procedurally of this type. Here, the principles of comity and federalism outlined in *Stone v. Powell* apply with special force because, in contrast to *Withrow, Kimmelman,* and *Rose,* Smith had the opportunity to obtain a full and fair, post-conviction, state review of the merits of his claim—a process that is essentially equivalent to federal *habeas* as a check on the constitutionality of the state's conviction and sentence. *See Stone,* 428 U.S. at 478 n. 11, 96 S.Ct. at 3044 n. 11 ("This Court has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its [full] habeas corpus power.") (citations omitted).

 Collateral review of judgments is subject to control by Congress, and judges are not obliged to exercise their jurisdictional power to its maximum extent. *See Stone,* 428 U.S. at 489, 96 S.Ct. at 3050; *see, e.g., Withrow v. Williams,* — U.S. —, ——, 113 S.Ct. 1745, 1766–67, 123 L.Ed.2d 407 (1993) (Scalia, J. concurring in part and dissenting in part); *Teague v. Lane,* 489 U.S. 288, 308–10, 109 S.Ct. 1060, 1074–75, 103 L.Ed.2d 334 (1989); *Stone v. Powell,* 428 U.S. 465, 478–82, 96 S.Ct. 3037, 3044–47, 49 L.Ed.2d 1067 (1976); *Francis v. Henderson,* 425 U.S. 536, 539, 96 S.Ct. 1708, 1710, 48 L.Ed.2d 149 (1976); *see also* Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,* 76 Harv. L.Rev. 441 (1963).

 The vitality of the Great Writ is best preserved and strengthened by its judicious use. The function of federal *habeas* is not to validate the outcome of state proceedings, but rather to confirm the adequacy of those state proceedings for detecting and correcting constitutional error. *Herrera,* — U.S. at ——, 113 S.Ct. at 869. Thus, having examined this area of the law and finding no other circuit in direct conflict with the approach we announce today, we hold that only if such procedures are wholly absent, or are

found to be constitutionally deficient, should a federal court independently inquire into the merits of matters such as the constitutionality of prior convictions used to enhance a present sentence. *See id.* at ——, 113 S.Ct. at 860.

 In this case, Smith did not challenge the validity of his '74 conviction on a direct appeal or collaterally, while he was serving his sentence for the '74 conviction. Furthermore, since the Indiana sentencing courts apply the presumptively void scope of review to prior state convictions, *see England v. State,* 530 N.E.2d 100, 103 (Ind.1988), Smith did not have the opportunity to litigate his claims, contesting the validity of the '74 conviction, at his sentencing hearing. Through his recent state petition for post-conviction relief, however, Smith was afforded a full and fair opportunity to litigate his constitutional challenge to the '74 conviction *after* he learned it would be used as an enhancement for his present conviction. *See* Ind.Code § 35 app. P.C.R. 1 (1980). After conducting a fact-intensive hearing (in which Smith was represented by counsel, presented evidence, and testified), the Indiana trial court denied Smith's petition, finding that his '74 guilty plea was obtained in compliance with the Constitution. The Indiana Court of Appeals affirmed the trial court's judgment and the Indiana Supreme Court denied transfer. Now, in his *habeas* petition, Smith seeks to present to a federal forum the same challenges to the validity of his '74 conviction that, by his state petition, were rejected after a fact-intensive hearing in a state forum. This we decline to permit. A state defendant may be entitled to a fact-intensive federal review of a state conviction—which has been used to enhance his current confinement—if he did not have an opportunity to fully and fairly litigate his challenge to the constitutionality of the conviction during his sentencing hearing or in a state post-conviction proceeding. Smith, however, has fully utilized his state's procedure for a post-conviction review and was unsuccessful on the merits. Since nothing in the record suggests that Smith was denied a full and fair opportunity to challenge the validity of his '74 conviction after learning of its new use, the district

court should have denied Smith's *habeas* petition without considering its merits. Therefore, for the foregoing reasons we affirm the denial of Smith's petition.

EASTERBROOK, Circuit Judge, concurring.

The opinion of the court advances four principal propositions:

1. A state need not permit an indirect collateral attack on an earlier conviction in the course of sentencing for a new offense.

2. A state should afford collateral review of the earlier conviction, after it has become salient to a sentence for another crime, subject to the standard rules about forfeiture, relitigation, undue delay, and abuse of the writ.

3. If the court in the collateral proceeding sets aside the earlier conviction, any sentence enhanced because of that conviction must be set aside, and the defendant must be resentenced without reliance on that conviction.

4. If the court in the collateral proceeding concludes that the earlier conviction is valid (or that the request for collateral relief is procedurally barred), then a sentence enhanced by virtue of that conviction does not violate the Constitution or laws of the United States and is not subject to attack under 28 U.S.C. § 2254. This implies that a federal court will not make an independent inquiry into the validity of the conviction that was used to enhance the current sentence unless the state fails to offer processes to set aside invalid prior convictions.

I agree in the main with these propositions and therefore join the judgment and the bulk of the court's opinion. (I take up below the nature of the reservations.)

The first proposition flows from *United States v. Mitchell*, 18 F.3d 1355 (7th Cir. 1994). The Supreme Court's impending decision in *Custis v. United States*, No. 92–5209 (argued Feb. 28, 1994), may affect this step of the argument, but, for now, *Mitchell* controls.

The second proposition reflects ordinary practice. Although federal law does not require states to provide collateral review of criminal convictions, all do. My colleagues properly emphasize that the role a prior conviction plays in sentencing for a new criminal episode may offer fresh impetus and justification for such a challenge. States should be receptive—lest they encourage everyone to wage more vigorous campaigns against all convictions on the off chance that they might be invoked to support recidivist sentencing. But state and federal courts retain authority to enforce doctrines limiting the scope of collateral review. Some of these doctrines address the sort of problem we confront. For example, 21 U.S.C. § 851(e) sets a five-year limit on the time defendants have to challenge convictions that may be used in sentencing for drug offenses. Collateral review of the first conviction may be impossible by the time the defendant is in the dock for a new offense, but § 851(e) has been upheld against constitutional challenge. *United States v. Williams*, 954 F.2d 668, 673 (11th Cir.1992). Contra, *United States v. Davis*, 15 F.3d 902, 914–16 (9th Cir.1994). Although the majority questions *Williams* (opinion at 1367 n. 9), we lack power to grant collateral relief after judgment in the teeth of a statute. The writ to which Article I § 9 cl. 2 of the Constitution refers is the one known in eighteenth-century England—principally the pretrial contest to the custodian's power to hold a person, the device that prevents arbitrary detention without trial. *Ex parte Bollman & Swartwout*, 8 U.S. (4 Cranch) 75, 2 L.Ed. 554 (1807); *Ex parte McCardle*, 73 U.S. (6 Wall.) 318, 18 L.Ed. 816 (1867); *Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). Federal judges' power to reexamine judgments rendered by courts possessing jurisdiction depends wholly on statute. *Ex parte Kearney*, 20 U.S. (7 Wheat.) 39, 5 L.Ed. 391 (1822); see also Dallin H. Oaks, *Habeas Corpus in the States—1776–1865*, 32 U.Chi.L.Rev. 243, 244–45 (1965). Collateral review of judgments accordingly is subject to legislative control, and when Congress curtails that power, we must respect its decision.

The third proposition finds strong support in *United States v. Tucker*, 404 U.S. 443, 92

S.Ct. 589, 30 L.Ed.2d 592 (1972), and *Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). *Tucker* held that the invalidation, on constitutional grounds, of a conviction that had been used to enhance a later sentence revealed that the sentence had been based on "misinformation of constitutional magnitude", 404 U.S. at 447, 92 S.Ct. at 592, which required resentencing. *Johnson* held that if one state's courts set aside a conviction on which another state relied in sentencing, the second state must modify its sentence in response. *Tucker* relied on 28 U.S.C. § 2255. As this is a close parallel to 28 U.S.C. § 2254, *Tucker* implies that state prisoners are entitled to the same sort of relief. *Johnson* reached the Supreme Court from a state court, which denied an application for collateral relief. It therefore does not interpret § 2254, but there can be little doubt that a sentence violating the norm established in *Johnson* would call for relief under § 2254.

The fourth proposition reflects the principle that if a state uses constitutionally valid procedures to render a judgment, the possibility that these procedures failed to catch a mistake in a particular case does not make the judgment constitutionally repugnant. Cases as diverse as *Herrera v. Collins,* —— U.S. ——, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), and *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), illustrate parts of this proposition. Cf. *Reed v. Clark,* 984 F.2d 209 (7th Cir.1993), cert. granted under the name *Reed v. Farley,* —— U.S. ——, 114 S.Ct. 437, 126 L.Ed.2d 371 (1993) (argued Mar. 28, 1994). It is not clear to me why this should not lead to the rule that a trial and direct appeal—or an opportunity to enjoy these procedures—are themselves enough to permit a later court to rely on the prior judgment. Once a defendant's "chance to appeal has been waived or exhausted, ... [a court may] presume that he stands fairly and finally convicted." *United States v. Frady,* 456 U.S. 152, 164, 102 S.Ct. 1584, 1592–93, 71 L.Ed.2d 816 (1982).

We know from *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), that even uncounseled convictions may be used as the foundation for a recidivist crime.

Congress made it a felony to possess a firearm after having been convicted of a crime; the Court held that this meant any prior conviction, even one rendered without constitutionally appropriate procedures. Defendants may use the trial and appeal to vindicate their constitutional entitlements. If they accept the judgment (as Lewis did), they may not ignore the legal consequences of that judgment. If as *Lewis* holds a prior judgment may be deemed conclusive for purposes of defining a criminal offense, why is it not conclusive for purposes of pronouncing sentence for a later offense? My concurring opinion in *Cuppett v. Duckworth,* 8 F.3d 1132, 1144–48 (7th Cir.1993) (en banc), concludes that there is no satisfactory answer to this question, which led me to say that a sentencing court is entitled to take at face value any prior conviction that was, or could have been, fully contested at trial and on direct appeal, and that has not been set aside on collateral review. Cf. *United States v. Mendoza–Lopez,* 481 U.S. 828, 841–42, 107 S.Ct. 2148, 2156–57, 95 L.Ed.2d 772 (1987) (alien charged with reentry after being deported may not challenge the conduct of the deportation hearing if he had an opportunity to obtain judicial review in the usual course). To the extent the majority departs from this understanding, I do not join its opinion.

Footnote 10 of the majority's opinion also gives me pause. My colleagues assert that one state may entertain a collateral attack on another state's conviction despite the full faith and credit clause. Although there is some force to the observation in *Mitchell,* 18 F.3d at 1361, that *at sentencing* a court "is not being asked to approve, enforce, or vacate the prior conviction, but merely to determine a proper ... sentence" for the new crime, the majority's approach removes such inquiries from sentencing. By sending the defendant to a separate proceeding, the majority calls for a standard attack on the prior judgment. That ought to occur in the rendering state, as it did in *Johnson,* rather than in the state that imposed the recidivist conviction. We have remarked that the full faith and credit clause makes any other approach problematic:

> *Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), holds

that if the rendering state sets aside its conviction, other states may not use that judgment to enhance their own sentences. Although the Court did not rely on the Full Faith and Credit Clause, it reserved the possibility that the Clause might have required the same decision. *Id.* at 585 n. 6, 108 S.Ct. at 1986 n. 6. If one state is *forbidden* to consider a conviction held invalid by the rendering state, perhaps it is *required* to accept as valid a conviction still on the books in the rendering state. Compare *Strader v. Troy,* 571 F.2d 1263, 1268 (4th Cir.1978), with *United States v. Jones,* 907 F.2d 456, 460–69 (4th Cir.1990), with *id.* at 482–83 (Wilkinson, J., dissenting). A state might believe, as the majority did in *Jones,* that to disregard another state's conviction in sentencing is not to deny it full faith and credit; yet we do not suppose that a state could say that it may deny registration and enforcement to another state's judgment so long as it gives lip service to the "validity" of that judgment. All the same, the Supreme Court has excused penal judgments from the seemingly absolute language of Art. IV § 1. E.g., *Huntington v. Attrill,* 146 U.S. 657, 666–69, 13 S.Ct. 224, 227–28, 36 L.Ed. 1123 (1892). Perhaps Art. IV § 2 cl. 2, which requires states to return escaping felons, is the measure of their obligation in criminal cases. Perhaps, however, the footnote in *Johnson* presages new force for Art. IV § 1 in criminal cases. Cf. *Puerto Rico v. Branstad,* 483 U.S. 219, 107 S.Ct. 2802, 97 L.Ed.2d 187 (1987).

*Lowery v. McCaughtry,* 954 F.2d 422, 423–24 (7th Cir.1992) (emphasis in original).

Quite apart from the full faith and credit clause, it is hard to see how Indiana could afford collateral relief from a conviction rendered by another state (say, Texas). The defendant would not be "in custody" in Indiana on the Texas conviction, and *Lowery* holds that only the rendering court may afford relief in the nature of *coram nobis.* Footnote 10 of the majority's opinion does not address any of these cases or considerations. No surprise. The parties did not brief the question, which is utterly irrelevant to this case: all of Smith's convictions were rendered by Indiana, he has received the

benefit of full collateral review, and we have no need to decide whether one state may review another's convictions—or what happens if the rendering state abolishes the writ of error *coram nobis.* I regard these questions as open, notwithstanding the obiter dicta in footnote 10.